IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-30689
Summary Calendar
_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                        versus

RICHARD L. BOWES,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court for
the Western District of Louisiana
(97-CV-929)
_____
March 13, 1998

Before REAVLEY, JOLLY and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:[*]

    Richard Bowes appeals the denial of his 28 U.S.C. § 2255

motion to set aside his convictions on three counts of illegal

structuring of financial transactions.  The district court denied

the motion but issued an certificate of appealability[1] on the

_____

    [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

    [1] See Fed. R. App. P. 22(b); *United States v. Youngblood*,
116 F.3d 1113 (5th Cir. 1997) (discussing applicability of Rule
22 to § 2255 cases).

issue of whether the Supreme Court's decision in *Ratzlaf v. United States*[2] entitles Bowes to relief from these convictions. We affirm.

BACKGROUND

Myron Palermo was approached in 1988 by undercover agents posing as drug dealers who wished to launder large sums of money. Palermo turned to Bowes, a former securities broker, for assistance. Palermo testified against Bowes as part of a plea bargain. Palermo and Bowes devised a fairly elaborate scheme to funnel cash through a Louisiana crawfish business, transfer the cash to a Canadian company and then disperse it back to the supposed drug dealers. On several occasions Palermo and Bowes received cash in excess of $10,000, and would then purchase several cashier's checks from different financial institutions in amounts of less than $10,000, which were returned to undercover agents.

The purchase and distribution of the cashier's checks were the basis of the three counts of illegal structuring on which Bowes was convicted. Federal law requires banks to file with the government cash transaction reports (CTR's) of transactions exceeding $10,000.[3] Federal law prohibits the structuring of transactions for the purpose of evading this reporting

---

[2] 510 U.S. 135 (1994).

[3] 31 U.S.C. § 5313; 31 C.F.R. § 103.22 (1997).

2

requirement.[4]  "A person willfully violating" this law is subject to criminal penalties.[5]

The jury was instructed "that the government is not required to prove that the defendant knew that structuring or the acts of structuring were unlawful."  After Bowes was convicted, the Supreme Court held that a criminal violation of the antistructuring law requires proof by the government that the defendant knew the structuring was illegal.[6]  Bowes sought collateral review of his conviction based the incorrect jury instruction as to the *mens rea* requirement for criminal liability.

## DISCUSSION

We have stressed that relief under § 2255 "is reserved for transgressions of constitutional rights and for a narrow range of injuries that would not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."[7]  Even errors of constitutional magnitude may not be raised for the first time on collateral review without a showing

---

[4]  31 U.S.C. § 5324.

[5]  *Id*. § 5322.

[6]  *Ratzlaf*, 510 U.S. at 137, 149.  After *Ratzlaf*, Congress amended § 5324 to impose criminal liability for structuring without a willfulness requirement.

[7]  *United States v. Payne*, 99 F.3d 1273, 1281 (5th Cir. 1996) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)).

3

of "cause" for the procedural default and "actual prejudice" resulting from the error.[8]  The cause and actual prejudice standard presents a "significantly higher hurdle" for the claimant that the plain error standard we apply on direct appeal.[9]

We accept that Bowes has met the cause requirement of the cause and prejudice test.  First, we have held that the government waives this requirement by failing to assert it as a procedural bar to collateral relief in the district court.[10]  We agree with the district court that the government did not argue below that Bowes's claim fails because he did not raise it earlier.  Further, Bowes cannot be faulted to failing to object at trial to the instruction.  Bowes was convicted before *Ratzlaf* was decided.  At the time the instruction correctly stated the law of this circuit.[11]  Bowes could not be expected to predict the outcome in *Ratzlaf.*  We also note that *Ratzlaf* was not decided until after the time for Bowes to file a notice of appeal

---

[8]  *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992).

[9] *Id.; United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (en banc).

[10] *United States v. Drobny*, 955 F.2d 990, 995 (5th Cir. 1992).

[11] *See United States v. Garza*, 42 F.3d 251, 253 (5th Cir. 1994); *United States v. Oreira*, 29 F.3d 185, 188 (5th Cir. 1994).

4

had expired.  Bowes did not bring a direct appeal of his conviction.

Nevertheless, a "collateral challenge may not do service for an appeal."[12]  In *United States v. Shaid*,[13] we analyzed whether relief under § 2255 was warranted where, as here, the jury was given an incorrect instruction on the *mens rea* requirement for criminal liability.  We held that the prisoner had not met the cause requirement of the cause and prejudice test.[14]  We also explained that "[a] mere possibility of prejudice will not satisfy the actual prejudice prong of the cause and prejudice test," and that the defendant must instead "shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."[15]

We conclude that relief on collateral review was properly denied.  For several reasons we are persuaded that Bowes has

---

[12] *United States v. Frady*, 456 U.S. 152, 165 (1982).

[13] 937 F.2d 228 (5th Cir. 1991) (en banc).

[14] *Id*. at 236.

[15] *Id*. (quoting *Frady*, 456 U.S. at 170.  *See also Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (holding that the standard for determining whether habeas relief must be granted in the case of a trial error is whether the error "'had substantial and injurious effect or influence in determining the jury's verdict.'") (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

shown nothing more than the possibility of prejudice from the erroneous instruction.  First, while the instruction "that the government is not required to prove that the defendant knew that structuring or the acts of structuring were unlawful" is incorrect after *Ratzlaf*, the government did not argue in opening and closing statements that it did not have to prove that Bowes knew the structuring was illegal.  "When reviewing challenges to jury instructions, we take into account the court's charge as a whole and the surrounding context of the trial, including arguments made to the jury."[16]

Second, in addition to the structuring convictions he now challenges, Bowes was convicted on a separate count of failing to file a CTR himself, in violation of 31 U.S.C. §§ 5313 and 5322. The jury was instructed that to find Bowes guilty on this count (Count IV), it had to find that Bowes was himself a financial institution as defined by relevant federal law, that he "had knowledge of the currency transaction reporting requirements," that "the failure to file the CTR at the time required was knowing and willful," and that "the failure to file was part of a pattern of illegal activity involving transactions of more than $100,000."  As to the structuring counts, the jury was instructed that it must find that "that the structure or attempted

---

[16] *United States v. Flores*, 63 F.3d 1342, 1374 (5th Cir. 1995).

structuring of the currency transaction(s) was part of a pattern of illegal activity involving transactions of more than $100,000 during a 12-month period."[17]  Hence the jury necessarily found that Bowes was aware that as to one of the related transactions his own conduct violated federal law, and that all the transactions were part of a pattern of illegal activity.  "[W]e have implied that to prove knowledge of the law under § 5322(a), evidence of structuring itself should be combined with evidence of a defendant's background or evidence of his awareness of the general illegality of his transactions."[18]

Third, the effect of the erroneous instruction was mitigated by other instructions that the structuring must be knowing and willful, and that "'[w]illful' requires proof of the defendant's knowledge of the reporting requirements and specific intent to commit the crime, that is to say, his actions were voluntary, intentional, and in violation of a known legal duty."  While the latter instruction is not crystal clear, it suggests that the defendant must know that his conduct is illegal.  The Seventh Circuit has held that an instruction stating that "[a]n act is done willfully if done voluntarily and intentionally with the

---

[17] This instruction was given because the government sought an enhanced penalty under 31 U.S.C. § 5322(b), which provides for enhanced punishment where the violation occurs "as part of a pattern of any illegal activity of more than $100,000 in a 12-month period . . . ."

[18] *United States v. Rodriguez*, 132 F.3d 208, 213 (5th Cir. 1997).

purpose of avoiding a known legal duty" comports "exactly with the *Ratzlaf* requirement that for a valid conviction a defendant must know of his duty to report a cash transaction and 'of his duty not to avoid triggering such a report.'"[19]

Finally, we cannot say that the evidence of guilt was so lacking that Bowes is entitled to relief on collateral review. Although Bowes worked in the securities industry for eleven years as a broker, at three major brokerage houses, he denied that he was ever involved in currency transaction reporting and denied knowing that "you couldn't structure transactions by making deposits of less than ten thousand dollars." He also points out that his employment as a broker ended long before Congress made structuring illegal. We have stated, in direct appeals, that "[t]o support the inference that the defendant knew structuring was a crime, the government must prove 'something more' than the fact that a defendant structured his transaction to avoid the filing of a CTR,"[20] and that evidence of intentional structuring "is not necessarily equivalent to an intent to do something illegal."[21]

---

[19] *United States v. Goulding*, 26 F.3d 656, 669 (7th Cir. 1994) (quoting *Ratzlaf*, 510 U.S. at 147).

[20] *United States v. Pipkin*, 114 F.3d 528, 532 (5th Cir. 1997).

[21] *Oreira*, 29 F.3d at 188.

However, the government's case went beyond mere proof of structuring. Palermo told Bowes that the money to be laundered was narcotics money. He testified that Bowes was not bothered at all that the money was derived from drug dealings. He also testified that given the source of the money "we didn't want to leave a paper trail." Bowes told Palermo he was giving Palermo cashier's checks because "they were not traceable." Bowes helped devise a fairly sophisticated scheme to launder the money through Louisiana and Canadian companies. Palermo was aware that a deposit of over $10,000 generated a CTR and discussed this fact with Bowes. On one tape played for the jury Bowes stated that he did not want to report to the "Feds." On another recording he stated that he was "in the business of creating shelters." The evidence against Bowes was such that we cannot say that denying collateral relief would amount to "a complete miscarriage of justice,"[22] or that the proof of guilt was so lacking that the erroneous instruction "infect[ed] his entire trial with error of constitutional dimensions."[23]

AFFIRMED.

---

[22] *Payne*, 99 F.3d at 1281.

[23] *Shaid*, 937 F.2d at 236.

9